UNITED STATES DISTRICT COURT
DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHANIE DAPPER, an individual, <br><br> Plaintiff <br><br> v. <br><br> BRINDERSON, LLC, a foreign limited liability company, AEGION ENERGY SERVICES, LLC, a foreign limited liability company, and MARATHON PETROLEUM COMPANY, LP, a foreign limited partnership, <br><br> Defendants | No. <br><br> COMPLAINT FOR DAMAGES AND JURY DEMAND |

**I.    PARTIES, JURISDICTION AND VENUE**

1.1   Plaintiff Stephanie Dapper resides in Skagit County, Washington.

1.2   Defendant Brinderson, LLC ("Brinderson") is a foreign limited liability company with its principal place of business in California. It conducts business in Skagit County, Washington.

COMPLAINT FOR DAMAGES AND JURY DEMAND
– 1

1.3    Defendant Aegion Energy Services, LLC ("Aegion") is a foreign limited liability company with its principal place of business in California. It conducts business in Skagit County, Washington.

1.4    Defendant Marathon Petroleum Company, LP ("Marathon") is a Delaware limited partnership with its principal place of business in Ohio. It conducts business in Skagit County, Washington.

1.5    At all relevant times, Defendants Marathon, Brinderson, and Aegion (collectively "Defendants") employed Stephanie Dapper and were employers under the Washington Law Against Discrimination, Wash. Rev. Code ch. 49.60 *et seq.* ("WLAD").

1.6    Some of Plaintiff's claims arise under the laws of the United States. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

1.7    Plaintiff's other claims arise under Washington State law. This Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367.

1.8    Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

1.9    Ms. Dapper timely obtained a right to sue against Marathon, Brinderson, and Aegion from the EEOC in compliance with 42 U.S.C. § 1391(b).

## II.    FACTS

1.10    Beginning in or around April 2018, Ms. Dapper was hired by Brinderson and Marathon as a Fire Hall Technician at Marathon's Anacortes Refinery (the "Refinery"). She worked at the Refinery for her entire employment relationship with Brinderson and Marathon.

1.11    Ms. Dapper received her pay and benefits through Brinderson. Each year of her employment with Brinderson and Marathon, she received a Form W-2 from Brinderson.

COMPLAINT FOR DAMAGES AND JURY DEMAND – 2

SCHROETER GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

1.12    Ms. Dapper rarely interacted with other Brinderson employees. Most of her day-to-day work involved Marathon employees at the Refinery.

1.13    Ms. Dapper's primary Human Resources contact was Jessica Perez-Okuno, an employee of Aegion.

1.14    Marathon guided and controlled Ms. Dapper's work. Her direct supervisor, Rory Eaton, was a Marathon employee. Mr. Eaton, along with his supervisor, Marathon employee Darick Brewer, assigned projects to Ms. Dapper and assessed her performance.

1.15    Marathon determined Ms. Dapper's work schedule.

1.16    All the tools Ms. Dapper used at work were provided by Marathon and took place at a site secured and controlled by Marathon. Marathon also allocated Ms. Dapper a Marathon email account.

1.17    Ms. Dapper's work as a Fire Hall Technician was a regular part of Marathon's business at the Refinery. A central component of Ms. Dapper's role was to ensure fire safety equipment and practices were up to regulatory standards to ensure the safety of other Marathon employees at the Refinery.

1.18    Marathon did not permit Ms. Dapper to perform certain work at the Refinery that she was qualified and certified to perform, including driving and fire teams work. Her male colleagues with the same or similar qualifications at the Refinery were permitted to perform this work.

1.19    On or around February 18, 2021, Ms. Dapper began maternity leave. Due to complications from childbirth, her maternity leave lasted longer than anticipated. Ms. Dapper returned to work at the Refinery on or around July 26, 2021.

1.20   Shortly after returning to work, Ms. Dapper heard from coworkers that Mr. Eaton discussed firing her while she was on maternity leave. When Ms. Dapper confronted Mr. Eaton about the rumor, he denied the rumor but admitted that he did not expect Ms. Dapper to return from her leave. During the conversation, Mr. Eaton made suggestive comments about Ms. Dapper's appearance.

1.21   One morning at the Refinery, Mr. Eaton commented to Ms. Dapper that he did not have a mouse for his computer. Ms. Dapper found a spare at the office for him. Later that day, Mr. Eaton approached Ms. Dapper at the fire hall and instructed her to get into a wildland truck. On occasion, Mr. Eaton would drive Ms. Dapper in the truck around the Refinery for work. This time, however, Mr. Eaton drove them to the gate to badge out of the Refinery. When she asked where he was taking her, Mr. Eaton responded that they were going to his house. He told Ms. Dapper that his wife was not home at the time. Ms. Dapper refused to enter the house. Mr. Eaton went into his house, returned, and then drove Ms. Dapper back to the Refinery.

1.22   After the day Mr. Eaton brought Ms. Dapper to his house, he began to touch her at work. On at least one occasion, he touched Ms. Dapper's stomach in front of her other coworkers.

1.23   On or around September 15, 2021, Ms. Dapper met with Mr. Eaton to request that he stop touching her and engaging in other inappropriate workplace behavior. She informed him that his behavior made her feel extremely uncomfortable and that it created a hostile work environment for her. During the meeting, Mr. Eaton instructed Ms. Dapper not to have any private meetings with his supervisor, Mr. Brewer.

1.24   On or around September 17, 2021, Ms. Dapper requested a meeting with Mr. Brewer. During the meeting, she reported Mr. Eaton's conduct. Mr. Brewer confirmed that Mr. Eaton had planned to terminate Ms. Dapper's employment while she was on maternity leave. After the meeting, Ms. Dapper began reporting directly to Mr. Brewer.

1.25   On or around September 20, 2021, Ms. Dapper spoke with Ms. Perez-Okuno. Ms. Perez-Okuno requested a written statement from Ms. Dapper about what took place with Mr. Eaton. Ms. Dapper provided a written statement the next day. The statement detailed Mr. Eaton's plan to terminate Ms. Dapper's employment while she was on maternity leave, the unplanned trip to Mr. Eaton's home, and the uninvited touching. The statement also described the significant emotional distress this caused Ms. Dapper.

1.26   On September 24, 2021, just days after raising her complaints of harassment and discrimination to Brinderson and Marathon, Ms. Dapper began receiving notifications that unauthorized users were attempting to access her private social media accounts, including Snapchat.

1.27   Ms. Dapper began noticing that Mr. Eaton's friends at the Refinery were glaring at her and following her around the Refinery. She reported the behavior to Ms. Perez-Okuno.

1.28   On or around October 15, 2021, Ms. Dapper learned that Mr. Eaton's friends referred to her by a sexually suggestive nickname. She reported the behavior to Ms. Perez-Okuno.

1.29   On or around October 21, 2021, Ms. Dapper was interviewed by legal counsel for Marathon. During the interview, he asked Ms. Dapper invasive questions about her

personal life. He also informed Ms. Dapper that A.J. Howard, one of Mr. Eaton's friends, accused her of touching him inappropriately. After the meeting, Ms. Dapper was instructed to go home.

1.30  On or around October 22, 2021, Brinderson informed Ms. Dapper that Marathon did not want her to return to work and placed Ms. Dapper on indefinite administrative leave.

1.31  During the leave, Ms. Dapper repeatedly asked when she could return to work.

1.32  On January 18, 2022, Ms. Perez-Okuno informed Ms. Dapper that her employment would terminate on January 21, 2022.

1.33  On April 1, 2022, Ms. Dapper filed a charge with the EEOC against Aegion and Brinderson.

1.34  On April 6, 2022, Ms. Dapper filed a charge with the EEOC against Marathon.

1.35  On April 14, 2022, a Marathon employee at the Refinery contacted Ms. Dapper to inform her that intimate images depicting her were posted to an online forum. The employee refused to tell her how he learned of the pictures or the name of the Marathon employee who posted them. Ms. Dapper contacted the forum to have the pictures removed. Ms. Dapper learned that other employees at the Refinery had shared and discussed the images.

1.36  On May 25, 2022, Ms. Dapper learned that more intimate images depicting her were posted online. This time, the pictures were posted along with her full name. Each

time the images were removed from the forum, they were posted again. This occurred repeatedly in May and June 2022.

1.37 Ms. Dapper continues to suffer economically and emotionally as a result of Defendants' misconduct, including ongoing, post-termination retaliation.

### III. CLAIMS

**A. Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the WLAD**

1.38 Ms. Dapper realleges the above allegations as though fully stated here.

1.39 Defendants discriminated against Ms. Dapper on the basis of her gender by exposing her to a hostile work environment, failing to address known instances of sexual harassment, failing to take action to prevent foreseeable instances of sexual harassment, treating her less favorably than her male colleagues, placing her on an involuntary administrative leave, terminating her employment, and otherwise improperly limiting her employment opportunities based on her gender.

1.40 Defendants terminated Ms. Dapper's employment with reckless indifference to her rights under Title VII.

1.41 As a direct and proximate result of the foregoing, Ms. Dapper has suffered and continues to suffer loss of compensation and benefits, lost future earnings, emotional distress, anxiety, humiliation, and embarrassment, each in amounts to be proven at trial.

**B. Retaliation in Violation of Title VII and the WLAD**

1.42 Ms. Dapper realleges the above allegations as though fully stated here.

1.43 Defendants violated Title VII and the WLAD when they retaliated against Ms. Dapper for her opposition to gender discrimination in the workplace, including but not

limited to her opposition to the harassment by Mr. Eaton and her decision to file EEOC charges.

1.44    Defendants retaliated against Ms. Dapper with reckless indifference to her rights under Title VII.

1.45    As a direct and proximate result of the foregoing, Ms. Dapper has suffered and continues to suffer loss of compensation and benefits, lost future earnings, emotional distress, anxiety, humiliation, and embarrassment, each in amounts to be proven at trial.

**C.    Gender Discrimination in Violation of Washington's Equal Pay and Opportunities Act, Wash. Rev. Code ch. 49.58 *et seq.* ("EPOA")**

1.46    Ms. Dapper realleges the above allegations as though fully stated here.

1.47    Defendants violated the EPOA by limiting Ms. Dapper's career advancement and depriving her of career advancement opportunities on the basis of her gender.

1.48    As a direct and proximate result of the foregoing, Ms. Dapper has suffered and continues to suffer loss of compensation and benefits, lost future earnings, emotional distress, anxiety, humiliation, and embarrassment, each in amounts to be proven at trial.

### IV.    PRAYER FOR RELIEF

1.49    In light of the foregoing, Ms. Dapper respectfully requests the following relief against Defendants:

a.    Damages for lost compensation and benefits in an amount to be proven at trial;

b.    Damages for emotional distress, anxiety, humiliation, and embarrassment in amounts to be proven at trial;

c.    Liquidated or exemplary damages, in an amount to be proven at trial;

    d.   Punitive damages, in an amount to be proven at trial;

    e.   Statutory damages under Wash. Rev. Code 49.58.070;

    f.   Reasonable attorneys' fees, expenses, and costs;

    g.   Pre- and post-judgment interest to the maximum rate allowed by law;

    h.   Increased payment to offset any additional tax obligations triggered by judgment in her favor;

    i.   Such other relief as this Court deems just and proper.

DATED this 28th day of April, 2023.

SCHROETER GOLDMARK & BENDER

*(signature)*

ELIZABETH HANLEY, WSBA #38233
ANDREW D. BOES, WSBA# 58508
401 Union Street, Suite 3400
Seattle, WA  98101
Phone:  (206) 622-8000
Fax:  (206) 682-2305
Email: hanley@sgb-law.com
       boes@sgb-law.com

*Attorneys for Plaintiff*