UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHANIE DAPPER,<br><br>   Plaintiff,<br><br>   v.<br><br>BRINDERSON, LLC, et al.,<br><br>   Defendants. | C23-0632 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a motion for partial dismissal of the complaint, docket no. 19, brought by Defendants Brinderson, LLC and Brock West, LLC f/k/a Aegion Energy Services, LLC (collectively, the "Brinderson Defendants"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

Plaintiff Stephanie Dapper is a resident of Skagit County, Washington. Compl. at ¶ 1.1 (docket no. 1). Defendants Brinderson, LLC ("Brinderson"), Aegion Energy Services, LLC ("Aegion"), and Marathon Petroleum Company, LP ("Marathon") conduct business in Skagit County, Washington. *Id.* at ¶¶ 1.2–1.4.

ORDER - 1

In or around April 2018, Brinderson and Marathon hired Dapper as a Fire Hall Technician at Marathon's Anacortes Refinery (the "Refinery"). *Id.* at ¶ 1.10.  Dapper received her pay, benefits, and tax forms from Brinderson but mostly interacted with Marathon employees during her day-to-day work at the Refinery. *Id.* at ¶¶ 1.11–1.12.  In addition, Dapper's direct supervisor, Rory Eaton, and his supervisor, Darick Brewer, were Marathon employees, and Mr. Eaton and Mr. Brewer assigned projects to Dapper and assessed her performance. *Id.* at ¶ 1.14.  Marathon also determined Dapper's work schedule, provided Dapper with the tools she used at work, and gave Dapper a Marathon email account. *Id.* at ¶¶ 1.15–1.16.  Dapper's primary Human Resources contact was Aegion employee Jessica Perez-Okuno. *Id.* at ¶ 1.13.

Dapper's position as a Fire Hall Technician included making sure "fire safety and equipment practices were up to regulatory standards to ensure the safety of other Marathon employees at the Refinery." *Id.* at ¶ 1.17.  Dapper alleges "Marathon did not permit [her] to perform certain work at the Refinery that she was qualified and certified to perform, including driving and fire teams work." *Id.* at ¶ 1.18.  In contrast, "[h]er male colleagues with the same or similar qualifications at the Refinery were permitted to perform this work." *Id.*

In February 2021, Dapper went on maternity leave, which lasted longer than anticipated because of complications from childbirth. *Id.* at ¶ 1.19.  Dapper returned to work at the Refinery in July 2021. *Id.*  After she returned to work, Dapper learned that Mr. Eaton discussed firing her while she was on maternity leave, and Dapper confronted Mr. Eaton. *Id.* at ¶ 1.20.  Mr. Eaton admitted he did not expect Dapper to return from

ORDER - 2

maternity leave but denied he discussed firing Dapper. *Id.* Dapper alleges Mr. Eaton also made suggestive comments about her appearance during this conversation. *Id.*

On one occasion at the Refinery, Mr. Eaton approached Dapper and instructed her to get into a truck. *Id.* at ¶ 1.21. Mr. Eaton would occasionally drive Dapper in the truck for work. *Id.* On this occasion, however, Mr. Eaton allegedly drove Dapper to his house and told Dapper his wife was not home. *Id.* After Dapper refused to enter Mr. Eaton's house, Mr. Eaton went inside before returning to the vehicle and driving Dapper back to the Refinery. *Id.* Dapper alleges Mr. Eaton then started touching her at work, including touching her stomach in front of her coworkers. *Id.* at ¶ 1.22.

In September 2021, Dapper met with Mr. Eaton and requested that he stop touching her and engaging in inappropriate behavior. *Id.* at ¶ 1.23. Dapper told Mr. Eaton "that his behavior made her feel extremely uncomfortable and that it created a hostile work environment for her." *Id.* Mr. Eaton told Dapper not to have private meetings with his supervisor, Mr. Brewer. *Id.* Dapper then met with Mr. Brewer and reported Mr. Eaton's conduct. *Id.* at ¶ 1.24. Mr. Brewer confirmed that Mr. Eaton planned to fire Dapper while she was on maternity leave. *Id.* Dapper started reporting directly to Mr. Brewer after their meeting. *Id.* Dapper also met with Ms. Perez-Okuno, who requested a written statement, which Dapper provided. *Id.* at ¶ 1.25.

After Dapper raised her complaints of discrimination and harassment, she allegedly started "receiving notifications that unauthorized users were attempting to access her private social media accounts, including Snapchat." *Id.* at ¶ 1.26. Additionally, Dapper started "noticing Mr. Eaton's friends at the Refinery were glaring at

ORDER - 3

her and following her around the Refinery[,]" and Dapper reported this behavior to Ms. Perez-Okuno. *Id.* at ¶ 1.27.

In October 2021, Dapper found out "Mr. Eaton's friends referred to her by a sexually suggestive nickname[,]" and Dapper reported this behavior to Ms. Perez-Okuno. *Id.* at ¶ 1.28. Dapper was then interviewed by Marathon's legal counsel. *Id.* at ¶ 1.29. Marathon's legal counsel allegedly asked her invasive personal questions and told Dapper that one of Mr. Eaton's friends accused her of inappropriately touching him. *Id.* Dapper was told to go home after the meeting. *Id.* Brinderson subsequently told Dapper that Marathon did not want her to return to work and placed her on indefinite administrative leave. *Id.* at ¶ 1.30. While on administrative leave, Dapper frequently asked when she could return to work. *Id.* at ¶ 1.31.

Ms. Perez-Okuno then told Dapper that Dapper's employment would terminate on January 21, 2022. *Id.* at ¶ 1.32. In April 2022, Dapper filed charges against Aegion, Brinderson, and Marathon with the Equal Employment Opportunity Commission. *Id.* at ¶¶ 1.33–1.34. After her employment was terminated, Dapper learned from a Marathon employee that intimate images of her were allegedly posted to an online forum. *Id.* at ¶ 1.35. That Marathon "employee refused to tell [Dapper] how he learned of the pictures or the name of the Marathon employee who posted them." *Id.* Such images were posted on multiple occasions. *Id.* at ¶¶ 1.35–1.36.

Dapper brings multiple claims against the Defendants: (i) gender discrimination in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Washington Law Against Discrimination ("WLAD"); (ii) retaliation in violation of Title VII and the WLAD; and

ORDER - 4

(iii) gender discrimination in violation of the Equal Pay and Opportunities Act, RCW 49.58 *et seq.* ("EPOA").  *Id.* at ¶¶ 1.38–1.48.  With respect to her third cause of action, Dapper alleges that Aegion, Brinderson, and Marathon "violated the EPOA by limiting [her] career advancement and depriving her of career advancement opportunities on the basis of her gender."  *Id.* at ¶ 1.47.  The Brinderson Defendants now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the EPOA claim against them, arguing that Dapper failed to allege sufficient facts to state a claim.  Mot. (docket no. 19).  Defendant Marathon "does not oppose the relief requested by" the Brinderson Defendants.  Marathon Resp. at 1 (docket no. 21).

**Discussion**

**1.    Rule 12(b)(6) Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In ruling on the pending motion for partial dismissal of the complaint, the Court must assume the truth of Dapper's allegations and draw all reasonable inferences in her favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  *See Twombly*, 550 U.S. at 570.

**2.    Dapper's EPOA Claim Against the Brinderson Defendants**

The EPOA provides that "[a]n employer may not, on the basis of gender, limit or deprive an employee of career advancement opportunities that would otherwise be

ORDER - 5

1  available."[1]  RCW 49.58.030(2).  According to Dapper, "[t]o show a violation of the

2  EPOA, a plaintiff need only show a gender-based differential in career advancement

3  opportunities."  Pl.'s Resp. at 3 (docket no. 23) (citing *inter alia Rizo v. Yovino*, 950 F.3d

4  1217, 1223 (9th Cir. 2020)).[2]  Dapper maintains that "[o]nce she has made such a

5  showing, 'the burden shifts to the employer to show an affirmative defense' and '[n]o

6  showing of pretext is required.'"  Pl.'s Resp. at 3–4 (quoting *Rizo*, 950 F.3d at 1123).[3]

7       Even under the standard she asserts, Dapper fails to plead a violation of the EPOA.

8  In her complaint, Dapper alleges that Marathon did not allow her to perform certain work

9  that her male colleagues with the same or similar qualifications were allowed to perform,

10  and that Aegion, Brinderson, and Marathon limited her career advancement opportunities

11  because of her gender.  Compl. at ¶¶ 1.18, 1.39, & 1.47.  Dapper's complaint fails,

---

[1] The EPOA provides a private right of action for actual damages, statutory damages, interest on compensation owed, and costs and reasonable attorneys' fees.  *See* RCW 49.58.070.

[2] The parties cite to cases discussing the federal Equal Pay Act ("EPA").  Mot. at 3 (docket no. 19); Pl.'s Resp. at 3 (docket no. 23).  The EPOA is a relatively new statute without much case law.  Washington courts are guided by the interpretation of analogous federal statutes.  *Hudon v. W. Valley Sch. Dist. No. 208*, 123 Wash. App. 116, 124, 97 P.3d 39 (2004) (noting that decisions interpreting the EPA may be helpful because the EPA is analogous to Washington's equal pay act).

[3] The *Rizo* court explained that "EPA claims have just two steps:  (1) the plaintiff bears the burden to establish a prima facie showing of a sex-based wage differential; (2) if the plaintiff is successful, the burden shifts to the employer to show an affirmative defense.  No showing of pretext is required."  950 F.3d at 1223 (footnote omitted).  The Brinderson Defendants cite to cases involving a motion to dismiss that articulate the same steps.  *See McMinimee v. Yakima Sch. Dist. No. 7*, No. 18-CV-3073, 2019 WL 11680199, at *12 (E.D. Wash. Aug. 7, 2019) (stating that a prima facie case under the EPA requires a plaintiff to prove that an employer pays different wages to employees of the opposite sex for equal work and once that showing is made, "the burden shifts to the employer to prove that the differential in wages is justified under one of the Equal Pay Act's four exceptions" (citations omitted)); *Abdullah-El v. Bon Appetit Mgmt. Co.*, No. C15-1946, 2016 WL 1756630, at *5 (W.D. Wash. May 3, 2016) ("To establish a prima facie EPA case, the plaintiff must show that employees of the opposite sex were paid different wages for equal work." (citation omitted)).

however, to allege facts regarding the availability of career advancement opportunities if Aegion, Brinderson, and Marathon had allowed her to perform certain work. For example, Dapper does not allege "driving and fire teams work" was a normal part of her job as a Fire Hall Technician, or that Aegion, Brinderson, and Marathon prohibited her from doing such work to limit her career advancement opportunities. In other words, Dapper does not allege she was prohibited from doing work that would have led to a promotion or other career advancement opportunities, and Dapper does not allege her male colleagues who were allowed to perform such work were promoted. Instead, Dapper makes a conclusory allegation that Aegion, Brinderson, and Marathon limited her career advancement opportunities because of her gender without providing sufficient factual support. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]" (citation omitted)). To sufficiently state her claim, Dapper must plead facts clarifying how the Brinderson Defendants limited her career advancement opportunities by not allowing her to perform certain work.[4] Therefore, Dapper's EPOA claim against the Brinderson Defendants is DISMISSED without prejudice with leave to amend.[5]

---

[4] In her response, Dapper states that "an amended complaint can identify the ways in which providing [her] with lesser assignments limited her career advancement opportunities." Pl.'s Resp. at 7 (docket no. 23).

[5] Pursuant to Rule 15(a), leave to amend shall be freely given when justice so requires. A district court may exercise its discretion and deny leave to amend for a variety of reasons, including undue delay, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of amendment. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). The Court exercises its discretion and GRANTS Dapper leave to amend her complaint.

ORDER - 7

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The Brinderson Defendants' motion for partial dismissal of the complaint, docket no. 19, is GRANTED, and Dapper's gender discrimination in violation of the EPOA claim (designated in Dapper's complaint as claim "C") against the Brinderson Defendants is DISMISSED without prejudice with leave to amend.

(2) Dapper shall file any amended complaint on or before August 24, 2023. Any answer or response is due within fourteen (14) days after the amended complaint is filed. *See* Fed. R. Civ. P. 15(a)(3).

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 10th day of August, 2023.

Thomas S. Zilly
United States District Judge